COMMONWEALTH *vs.* JOHN N. ROSSI. March 1, 1983. The defendant was found guilty by a jury in a District Court on a complaint charging that he had received property, meat valued at less than $100, knowing that it had been stolen from Food Mart, Inc. On appeal he argues: (1) that the trial judge committed reversible error in failing to exclude certain evidence from the jury's consideration; and (2) that it was error to deny his motion for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), because the Commonwealth failed to prove both that the meat was stolen property and that the defendant knew of that fact. We affirm.

The assistant manager of the Belmont Avenue Food Mart, Inc., in Springfield, Joe Gonyer, testified that on the night of September 17, 1981, he saw two men, one tall and one short but neither of whom was the defendant, at the meat counter of his store. He did not see the men take anything, but after they left the store he called Dana Tillman, the assistant manager of the Food Mart, Inc., on Cooley Street, Springfield. Gonyer described the two men to Tillman and warned him that they might be shoplifting. Tillman testified that shortly after Gonyer's call he saw two men at the meat counter of his (Tillman's) store. They fit the description given by Gonyer. Tillman recognized the shorter of the two men as a man he had ejected from the store on a prior occasion. He told an employee to call the police. Tillman kept the men under observation, and he saw that both had shopping baskets and that the taller man had packaged meats in his basket. The shorter man saw Tillman, moved to the front of the store, and left without any items. In watching the shorter man, Tillman lost sight of the taller for about five minutes. When he next saw him, he too was leaving the store without any groceries. Tillman saw this man, the taller, get into a car in the parking lot just as police Officer Michael Shumway arrived in his cruiser.

The driver of the car which the taller man had entered was the defendant, and he pulled out of the parking lot and drove off without turning on his headlights. With his siren and roof light on, Shumway followed the car for about half a mile, when the defendant turned into a church parking lot. Shumway saw a bag being thrown from the passenger window, and he followed the car until the defendant brought it to a stop at a dimly lighted section of the lot. Shumway ordered the men out of the car, and he saw unbagged packages of meat on the floor in the back seat area. More packages of meat and seafood were recovered in the previously discarded bag at the entrance to the lot. A total of fourteen packages of meat, one package of crab, and eight cans of seafood were found. Of these items, Tillman could identify only six packages of meat, steaks, as being from Food Mart, Inc.

1. The defendant's evidentiary claims do not entitle him to relief. (a) Especially in view of the trial judge's timely instruction to the jury that Gonyer's statement to Tillman that the men might be shoplifting was evidence only of what Gonyer had told Tillman and not proof that anything had been stolen, we see no abuse of discretion in the trial judge's refusal to strike all of Gonyer's testimony simply because no one had positively identified the two men in his store as being the same men in Tillman's branch. See *Commonwealth* v. *Durkin*, 257 Mass. 426, 427-428 (1926); *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 610-612 (1973). (b) We cannot say that the trial judge abused his discretion in admitting evidence, testimonial and photographic, of the meat and seafood which Tillman could not identify as having come from Food Mart, Inc. This evidence tended to show the circumstances under which

the crime charged was committed. See *Commonwealth* v. *Durkin,* 257 Mass. at 427-428. Compare *Commonwealth* v. *Wesley,* 6 Mass. App. Ct. 513 (1978). Additionally, the total quantity of items was probative on the question whether the defendant, who had not been identified as having been in either store, even knew that there was meat in the car he was driving. (c) While the defendant objected several times in the course of the prosecutor's summation and took an objection to the "whole" of the closing argument, no particular complaint was voiced to the specific remark now urged as being improper. We see no substantial risk of a miscarriage of justice in the prosecutor's statement that the men seen by Gonyer "[i]n fact . . . came into [Tillman's] store," even assuming the remark to be improper and notwithstanding Tillman's testimony that the men in his store matched the description given by Gonyer.

2. While the evidence against the defendant might not appear to some to be overwhelming, we think it was sufficient to satisfy a rational trier of fact beyond a reasonable doubt, *Commonwealth* v. *Latimore,* 378 Mass. 671, 678 (1979), that the defendant received stolen goods knowing them to have been stolen. See *Commonwealth* v. *Donahue,* 369 Mass. 943, 949 (1976). In proving that the meat identified by Tillman as coming from a Food Mart, Inc., store was stolen, the Commonwealth was not required to show a chain of possession of the meat from the Cooley Street branch of the store to the taller man who then got into the defendant's car. "The law does not require the impossible. Not every examplar of every kind of property can be individually recognized, and the closer to fungibility the property comes the less possible is accuracy of identification. This is peculiarly a jury question. Likelihood plays a part. It is not every home that has an old 'cartwheel' English penny of 1797; in fact, very few homes have them. Time is a factor, too . . . ." *Commonwealth* v. *Sears,* 188 Pa. Super. 31, 35-36 (1958). The jury could infer that the meat had been stolen from a Food Mart, Inc., store from the following evidence: (a) at one point Tillman saw the taller man in his store with packaged meats in a shopping basket; (b) Tillman lost sight of this man for about five minutes; (c) this man got into the defendant's car, and the defendant drove off without turning on his headlights; (d) a bag of meat and seafood was thrown from the defendant's car as he drove to a poorly lighted section of the church parking lot with Officer Shumway in pursuit; (e) unbagged packages of meat were in the back of the car; (f) no saleslips or receipts were found with those items or in the retrieved bag; and (g) Tillman identified the meat which is the subject of the complaint as having come from a Food Mart, Inc., store. See *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371 (1925); *Commonwealth* v. *Ryan,* 11 Mass. App. Ct. 906, 907 (1981). That the stolen meat had come into the defendant's possession recently was established by the very condition in which the perishable goods were found. The fact of the defendant's possession of recently stolen property, see *Commonwealth* v. *Settipane,* 5 Mass. App.

Ct. 648, 652-653 (1977), and cases therein cited, coupled with the evidence of the manner in which he drove away from the store and the location where he came to a stop, see, e.g., *Commonwealth* v. *Booker,* 386 Mass. 446, 470 (1982), would allow the jury to infer that the defendant knew the meat was stolen. It was not error to deny his motion for a required finding of not guilty.

3. In light of *Commonwealth* v. *Burns,* 388 Mass. 178 (1983), and *Commonwealth* v. *Kameese,* 388 Mass. 1004 (1983), we have reviewed the jury instructions and find no error.

*Judgment affirmed.*

*Janet Kenton-Walker* for the defendant.

*John M. Payne, Jr.,* Assistant District Attorney, for the Commonwealth.