COMMONWEALTH vs. WAYNE FERREIRA.

No. 87-889.

Bristol. March 16, 1988. — May 25, 1988.

Present: BROWN, KAPLAN, & WARNER, JJ.

*Interstate Agreement on Detainers. Practice, Criminal,* Defendant in custody of another jurisdiction, Detainer, Speedy trial. *Constitutional Law,* Speedy trial. *Evidence,* Other offense.

A criminal defendant was not entitled to dismissal under Mass.R.Crim. P. 36 (d) (3), of the indictments pending against him by reason of a delay in the filing of a detainer under the Interstate Agreement on Detainers while he was incarcerated in another State, where the defendant had suffered no prejudice from the delay within the meaning of that rule. [69-71]

A criminal defendant was not entitled to dismissal of the indictments pending against him for the prosecution's alleged failure to bring him to trial within the time limits set forth in Mass.R.Crim.P. 36 (b) (1) (B), where, because the defendant was incarcerated outside the Commonwealth between his arraignment and the trial, an exception to the time limits under Mass.R.Crim.P. 36 (d) (3) was applicable, which required a showing of prejudice that the defendant had not demonstrated. [71-72]

A criminal defendant was not entitled to dismissal of pending indictments under the provisions of Mass.R.Crim.P. 36 (c) by reason of the allegedly unreasonable lack of diligence on the part of the prosecutor in bringing him to trial, where the defendant demonstrated no prejudice either within the meaning of rule 36 (c) or in accordance with the standards set forth in *Barker* v. *Wingo,* 409 U.S. 514 (1972). [72]

The judge at a criminal trial properly admitted, with limiting instructions, evidence of the defendant's possible commission of a similar crime to show knowledge, intent, motive or method material to the proof of the breaking and entering and larceny with which the defendant was charged. [72-73]

INDICTMENTS found and returned in the Superior Court Department, two on October 23, 1980, and one on February 18, 1981.

Successive motions to dismiss all pending indictments against the defendant were heard by *John D. Sheehan,* J., and *Francis W. Keating,* J. The earlier indictments were tried before *William H. Carey,* J., and the later indictment was tried before *George N. Hurd, Jr.,* J.

*Louis D. Coffin* for the defendant.

*Cynthia A. Vincent,* Assistant District Attorney (*Dana Curhan,* Assistant District Attorney, with her) for the Commonwealth.

KAPLAN, J. In early 1981, the defendant Ferreira had outstanding against him perhaps a dozen indictments for various offenses. We need pay particular attention to:

Nos. 6974-6975, October 23, 1980, breaking and entering and larceny of an amount over $100 arising from a single incident; arraignment October 24, 1980; trial commenced April 10, 1985; defendant convicted.

No. 7652, armed robbery, February 18, 1981; arraignment March 11, 1981; trial commenced September 24, 1985; defendant convicted.

The defendant takes his consolidated appeals from these convictions, claiming that his motion, and further motion, to dismiss the three indictments (among others) on speedy-trial grounds were denied erroneously; and, with respect to the trial for breaking and entering and larceny, that the judge erroneously admitted evidence of extraneous misdeeds.

Here is the framework of facts which we fill in below. On April 10, 1981, the cases were continued to May 18, 1981, for trial. As the defendant was unable to find bail, he was returned to custody at a house of correction to await trial. On April 19, 1981, he escaped this lockup. On May 2 or 3, 1981, he was arrested and on May 4, 1981, arraigned in a Rhode Island court charged with having committed on May 2, 1981, the crime of assault with intent to murder and related crimes, and charged also with being a fugitive from Massachusetts justice. On May 29, 1981, he received a committed sentence of three years. From imprisonment in Rhode Island's Adult Correctional Institution (ACI), the defendant was paroled on June 10, 1983. Finally, he was found and arrested by Massa-

chusetts police in Fall River on September 22, 1983, and the trials of Nos. 6974-6975 and No. 7652 and the convictions followed.

Now we bear down on matters related to arguments about delay of trial.

1. In his first motion, the defendant alleged that he was entitled to dismissal of the three indictments (among others) by reference to the Interstate Agreement on Detainers (IAD), St. 1965, c. 892, taken together with Mass.R.Crim.P. 36(d)(3), 378 Mass. 913 (1979). A judge of the Superior Court, in denying the motion, made findings, which we supplement with some details from the record. When the defendant failed to appear for trial in the Superior Court in Bristol County on May 18, 1981, he was defaulted, and a capias issued for his arrest. Rhode Island police by letter of May 5, 1981, had informed an administrator of the New Bedford house of correction that the defendant, after arraignment in East Providence, was refusing to waive extradition; and on June 9, 1981, the Rhode Island Attorney General's office wrote to an assistant district attorney for Bristol County advising that the defendant had been sentenced and suggesting that papers be forwarded to the ACI to serve as a detainer. The Bristol County prosecutor evidently intended to lodge the capias and other papers at the ACI as a detainer, but what efforts he and others made in good faith[1] failed to achieve the object, and no proper request was made for transfer of the defendant for trial in Massachusetts; so the judge found.

Rule 36(d)(3) of our Rules of Criminal Procedure (1979), may be read as requiring the prosecutor to go forward under the IAD,[2] for it states in part: "If the prosecutor has unreasonably

---

[1] At the hearing on the first motion to dismiss, the prosecutor testified that he handed the capias to a police officer, and the officer testified that he delivered it at the ACI in Rhode Island, but there was no record of its receipt there.

[2] Evidently the IAD itself does not impose an obligation on the State to initiate the detainer procedure. See *United States* v. *Mauro,* 436 U.S. 340, 343 (1978); *State* v. *Reynolds,* 218 Neb. 753, 759 (1984). See also *Commonwealth* v. *Petrozziello,* 22 Mass. App. Ct. 71, 76-77, cert. denied, 479 U.S. 852 (1986).

delayed (A) in causing a detainer to be filed . . ., or (B) in seeking to obtain the defendant's presence for trial, and the defendant has been prejudiced thereby, the pending charges against the defendant shall be dismissed." If in the present case the prosecutor failed in a duty under the rule to file and pursue a detainer, it is plain enough, as the judge also found, that the defendant was not prejudiced but, if anything, was benefited thereby. Compare *Commonwealth* v. *Corbin*, 25 Mass. App. Ct. 977, 980 (1988). A return to Massachusetts and the numerous pending indictments there (now including one for escape from lawful detention) was not high on the list of the defendant's desires. As noted, he refused to waive extradition in May, 1981. Cf. *Commonwealth* v. *Giordano*, 9 Mass. App. Ct. 888 (1980). Although aware of the pending Massachusetts charges and, by reason of his familiarity with the criminal justice and prison systems, knowledgeable in the courses open to him, he made no request during the period of his incarceration in Rhode Island to be transferred to Bristol County to face the indictments. Cf. *Commonwealth* v. *Anderson*, 9 Mass. App. Ct. 699, 704 (1980). As the defendant's imprisonment neared its end and he was being cleared for parole, the Rhode Island authorities discovered the fact of a pending Massachusetts indictment[3] and charged and held him again as a fugitive from justice. At that point for a second time he refused to waive extradition. To complete this episode, by posting bail on the fugitive charge, the defendant secured his release. He was next found over the border in Fall River and was arrested on September 22, 1983, on a charge of assault with a deadly weapon.

During his imprisonment in the Rhode Island ACI, the defendant was allowed to pass from maximum security status to minimum security, was accorded work release and furlough privileges, and ultimately was paroled. The judge found, and the defendant has not controverted, that "[i]f the Rhode Island Department of Corrections authorities had known of any Massachusetts detainers concerning the defendant, they would not

---

[3] Muriel Carty, a record keeper at the ACI, found in the defendant's file a Massachusetts warrant regarding a robbery received on February 24, 1981.

have allowed the defendant to progress from maximum to medium and minimum security within the ACI or to participate in any work/release, furlough, or parole programs."

Further regarding the absence of prejudice to the defendant, we add there is no indication of substance that the defendant lost witnesses or any other forensic aids because of the lapse of time until trial.

The defendant argues that, had detainer procedure been followed, a Massachusetts judge might have made any sentence concurrent in whole or in part with the Rhode Island sentence. This is no more than a speculative possibility (weakened by the fact that there were so many indictments to be conjured with). See 2 LaFave & Israel, Criminal Procedure § 18.4, at 420 (2d ed. 1984). Cf. *Commonwealth* v. *Willis*, 21 Mass. App. Ct. 963, 965 n.5 (1986).

2. In his second motion the defendant referred to Mass.R. Crim.P. 36(b), 378 Mass. 909 (1979), with its basic limitation provisions which in the present cases would — subject to excludable periods — require trial within eighteen months of the respective dates of arraignment.[4] The defendant's brief on appeal simply lists the periods, including the period of imprisonment in Rhode Island which, he asserts, must be counted. The listed periods, other than the period of imprisonment in Rhode Island, aggregate less than eighteen months (in fact they are themselves subject to material exclusions[5]). If the imprisonment period is excepted, the defendant has no case. In fact, rule 36(b)(1) commences thus: "Standards of a Speedy Trial. . . . A defendant, *except as provided by subdivision (d)(3) of this rule*, shall be brought to trial within the following time periods, except as extended by subdivision (b)(2) of this

---

[4] The "return" dates (arraignments) for indictments Nos. 6974-6975 and No. 7652, respectively October 24, 1980, and March 11, 1981, fell within the second twelve-month period after the effective date of the Massachusetts Rules of Criminal Procedure (July 1, 1979), and thus the cases were to be tried within eighteen months of arraignment. See rule 36 (b)(1)(B); *Commonwealth* v. *Farris*, 390 Mass. 300, 304 (1983).

[5] E.g. periods of continuances without defendant's objection, and of judge's deliberations on pending motions. See *Commonwealth* v. *Farris*, 390 Mass. 300, 305-306 (1983).

rule: . . ." (emphasis added). Thus, by the text of the rule, as well as common sense, we are brought back to the demonstration of the absence of the prejudice mentioned in subdivision (d)(3).

3. Subdivision (c) of rule 36, 378 Mass. 912 (1979), has an overriding provision: although a defendant may not be entitled to dismissal under subdivision (b), he may yet secure dismissal when a judge, upon full consideration, determines that the conduct of the prosecutor in bringing the defendant to trial was unreasonably lacking in diligence and "this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant." We need not consider whether subdivision (c) can apply at all to (d)(3) cases excepted from (b), because in any event "prejudice" in (c) cannot be far different from "prejudice" in (d)(3). However, we indulge the assumption that over and above any criteria of rule 36 there may be more demanding constitutional criteria that can apply in particular cases, and satisfaction of rule 36 would then be not enough. Such constitutional standards would derive from *Barker* v. *Wingo*, 409 U.S. 514 (1972). Upon consideration of the elements or factors considered relevant in the *Barker* and later cases, we are confident, as apparently was the judge, that the defendant can make no better progress toward dismissal of the indictments under the supposed constitutional aegis than under any aspect of rule 36.[6]

4. The defendant does not dispute that the proofs received at the trials justify the convictions beyond a reasonable doubt. However he asks us to hold that the convictions of breaking and entering and larceny must be overturned because the judge, over objection, admitted evidence of the presence of the defendant's fingerprints at a house broken into five days after the housebreak for which he was indicted, both houses being in the same neighborhood, and the circumstances of the crimes being roughly similar. This evidence could not be admitted to

---

[6]The motion judge weighed the *Barker* v. *Wingo* factors: length of and reason for delay, defendant's assertion of rights, and prejudice to defendant. 409 U.S. at 530. See also *Commonwealth* v. *Beckett*, 373 Mass. 329 (1977).

show that the defendant had a propensity for criminal behavior, see *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982), but could be accepted to establish "knowledge, intent, motive, method, material to proof of the crime charged." *Commonwealth* v. *Murphy*, 282 Mass. 593, 598 (1933). The judge's discretion in receiving evidence for the latter purposes was not exceeded here. See *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 695 (1979); *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985). The judge instructed the jury about the limited inferences they could draw from the evidence (if they chose to draw any). See *Commonwealth* v. *Bettencourt*, *supra*.

*Judgments affirmed.*